IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**MICHEAL MCCARRELL, *et al.*,**

        ***Plaintiffs*,**

**v.**

**MICHAEL P. BETLEY,**

        ***Defendant*.**

**Case No. 1:23-CV-02781-JRR**

## MEMORANDUM OPINION

Pending now before the court is Defendant Michael P. Betley's Motion to Dismiss Second Amended Complaint or, in the Alternative, for Summary Judgment and to Strike Class Allegations.[1]  (ECF No. 57; the "Motion.")  The court has reviewed all papers; no hearing is necessary.  Local Rule 105.6 (D. Md. 2025).  For the reasons that follow, by accompanying order, the Motion will be denied.

## I.    BACKGROUND[2]

### A.  The Present Litigation

On June 28, 2023, Plaintiffs initiated this action against Defendant Betley, the president and sole shareholder of MBA Mortgage Services, Inc. ("MBA") in the Circuit Court for Baltimore, County, Maryland.  (ECF No. 2.)  Defendant removed the action to this court on October 13, 2023. (ECF No. 1.)  Following previous amendment, Plaintiffs Micheal McCarrell and Daniel Schultz bring the now-operative Second Amended Complaint ("SAC"), which asserts claims on behalf of

---

[1] Also pending is Plaintiffs' unopposed Motion to Correct and/or Supplement Record in which Plaintiffs seek to correct an omission from their original briefing in opposition to the Motion at ECF No. 57.  (ECF No. 62.)  The court will grant the unopposed motion.

[2] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Second Amended Complaint.  (ECF No. 56.)  *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

themselves and a putative class of persons similarly situated, for violation of the Real Estate

Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a) (Count I), and violation of the

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (Count II).

(ECF No. 56.)  With the filing of the SAC, Mr. Schultz was added as a Plaintiff.  *Id.*

Plaintiffs and the alleged class members "are borrowers who currently have or had a

residential mortgage loan originated and/or brokered by [MBA], which was or is secured by [their]

residential real properties."  *Id.* ¶ 1.  Plaintiffs allege they "are victims of an illegal kickback

agreement . . . between MBA and All Star Title, Inc. . . . , a Maryland based title and settlement

services company, and a related scheme to defraud . . . borrowers into paying fraudulent charges

for title and settlement services, carried out through the use of the interstate U.S. mails."  *Id.* ¶ 2.

According to Plaintiffs:

> Under the kickback agreement, Defendant Michael P. Betley,
> MBA's president and sole shareholder ("Betley"), as well as MBA
> branch managers, loan officers, agents, and/or other employees
> acting on Betley's direction, received and accepted illegal kickbacks
> in exchange for the selection and referral of residential mortgage
> loans, refinances, and reverse mortgages to All Star for title and
> settlement services in violation of [RESPA], 12 U.S.C. §§ 2601, et
> seq. These kickbacks were paid pursuant to a quid pro quo
> agreement for kickbacks in exchange for the referral of MBA
> borrowers to All Star. Neither Betley, MBA, nor any MBA
> employee and/or agent receiving the kickbacks performed any title
> or settlement services associated with the kickbacks.

*Id.* ¶ 3.  They allege MBA received illegal kickbacks from at least 2009 through 2015.  *Id.* ¶¶ 16–

32.

Plaintiffs allege both RESPA and RICO class claims, with the proposed RESPA class

defined as:

> All individuals in the United States who were borrowers on a
> federally related mortgage loan (as defined under [RESPA], 12
> U.S.C. § 2602) originated or brokered by [MBA] for which All Star

Title, Inc. provided a settlement service, as identified in Section 1100 on the borrower's HUD-1, between July 1, 2009 and December 31, 2015. Exempted from this class is any person who, during the period of July 1, 2009 through December 31, 2015, was an employee, officer, member and/or agent of [MBA] or All Star Title, Inc.

(ECF No. 56 ¶ 202.)  Plaintiffs' proposed RICO class is defined as:

All individuals in the United States who were borrowers on a refinance, reverse mortgage, or other mortgage loan originated or brokered by [MBA], for which All Star Title, Inc., provided a settlement service, as identified in Section 1100 on the borrower's HUD-1, between July 1, 2009 and December 31, 2017. Exempted from this class is any person who, during the period of July 1, 2009 through December 31, 2017, was an employee, officer, member and/or agent of [MBA] or All Star Title, Inc.

*Id.* ¶ 221.

Of note here, Plaintiffs allege that MBA "fraudulently conceal[ed] the kickbacks" and the scheme to defraud by "launder[ing] kickbacks through third-party marketing companies and us[ing] sham invoice and payment records," "fraudulent marketing representations," "false allocation of fees and [Annual Percentage Rate] manipulation," and "false representations in MBA borrowers' loan documents."  (ECF No. 56 ¶¶ 115–47.)  They further allege that they did not learn of "any potential wrongful, illegal, harmful, and/or actionable conduct by anyone related to [their] MBA loan[s]" until "[s]ometime after June 28, 2022," when they were contacted by counsel related to an investigation of MBA.  *Id.* ¶¶ 167, 187.

Shortly after the instant action was removed to this court, Defendant moved for an order to show cause and for sanctions, arguing that then-Plaintiffs,[3] including Mr. McCarrell, did not know

---

[3] That motion was also brought on behalf of former Plaintiff Mary Matthew who was terminated from the action effective January 28, 2025.  The motion was not brought on behalf of Plaintiff Schultz, as he was not yet a named Plaintiff.

about or authorize the filing of the lawsuit on their behalf.[4]  (ECF No. 8.)  In support of his motion, Defendant offered an affidavit from Mr. McCarrell's mother, Mary Soller, in which she attested that Mr. McCarrell "told [her] that he was contacted by attorneys—whom he could not identify—by telephone several years ago regarding a possible lawsuit against MBA Mortgage," meaning several years before October 2023.  (Soller Aff., ECF No. 8-1 ¶ 10.)

The court convened an evidentiary hearing on Defendant's motion on December 11, 2023, wherein Mr. McCarrell, on inquiry by the court, offered the following testimony related to same:

> Q. Do you recall telling your mother that you were contacted by the Plaintiffs' attorneys that represent you in this case many years before that or in the 2018/19 time frame?
>
> A. No, I do not.  2022 was the first time I was contacted.
>
> Q. Okay.  And so you didn't tell your mother that you had been contacted by these Plaintiffs' attorneys before that time period?
>
> A. No.

(Dec. 11, 2023 Hr'g Tr., ECF No. 38 at 11:5–12.)  Following the hearing, the court denied Defendant's motion, noting that it was "satisfied that Mr. McCarrell engaged Plaintiffs' counsel in July 2022 and authorized and consented to the filing of the instant action in his name (initially in state circuit court) to include amended pleadings."  (ECF No. 23.)

Following a denial of Plaintiffs' motion for remand and amendment of the pleadings, Defendant filed the instant motion seeking dismissal or, in the alternative, summary judgment. (ECF No. 57.)

---

[4] As discussed *infra*, the court will consider whether summary judgment is warranted on the timeliness of Mr. McCarrell's claim.  Of note, the material facts underlying the argument are disputed.  The court's discussion herein refers to the evidence offered by each party in support of their argument.

**B.  The *Remsnyder* Litigation**

Relevant to the present action, a separate group of plaintiffs, represented by the same counsel who represent Plaintiffs here, initiated a class action against MBA on February 20, 2019, *Remsnyder v. MBA Mortgage Services, Inc.*[5]  (Case No. JRR-19-492, ECF No. 1.)  The *Remsnyder* plaintiffs also advance RESPA and RICO violations, *inter alia*, based on the alleged kickback scheme, involving the same transactions and occurrences as the present case.  *Id.* ¶¶ 509–24, 540–58.  The *Remsnyder* plaintiffs similarly proposed RESPA and RICO classes, defined as follows:

> RESPA Class: All individuals in the United States who were borrowers on a federally related mortgage loan (as defined under [RESPA], 12 U.S.C. § 2602) originated or brokered by [MBA] for which All Star Title, Inc. provided a settlement service, as identified in Section 1100 on the borrower's HUD-1, between July 1, 2009 and December 31, 2015. Exempted from this class is any person who, during the period of July 1, 2009 through December 31, 2015, was an employee, officer, member and/or agent of [MBA] or All Star Title, Inc.

> RICO Class: All individuals in the United States who were borrowers on a refinance, reverse mortgage, or other mortgage loan originated or brokered by [MBA] for which All Star Title, Inc. provided a settlement service, as identified in Section 1100 on the borrower's HUD-1, between July 1, 2009 and December 31, 2017. Exempted from this class is any person who, during the period of July 1, 2009 through December 31, 2017, was an employee, officer, member and/or agent of [MBA] or All Star Title, Inc.

*Id.* ¶¶ 514, 548.  The proposed RESPA and RICO classes in *Remsnyder* were identical to those proposed here.

On September 1, 2022, the *Remsnyder* plaintiffs moved for class certification in accordance with Federal Rule of Civil Procedure 23 for an MBA class with RESPA and RICO subclasses as follows:

---

[5] In evaluating a 12(b)(6) motion, the court may take judicial notice of matters of public record. *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

MBA Class: All individuals in the United States who were borrowers on a mortgage loan originated or brokered by [MBA], for which All Star Title, Inc., provided a settlement service, as identified in Section 1100 on the borrower's HUD-1 or on the Closing Disclosure1 between July 1, 2009 and December 31, 2015. Exempted from this class is any person who, during the period of July 1, 2009 through December 31, 2015, was an employee, officer, member and/or agent of [MBA] or All Star Title, Inc.; any judicial officer who handles this case, and the immediate family members of such judicial officer(s).

RESPA Subclass: The RESPA Subclass is comprised of all members of the MBA Class who were borrowers on a federally related mortgage loans (as defined under [RESPA], 12 U.S.C. § 2602).

RICO Subclass: The RICO Subclass is comprised of all members of the MBA class.

(Case No. JRR-19-492, ECF No. 54.) On September 6, 2023, the Honorable Catherine C. Blake granted the *Remsnyder* plaintiffs' motion, certifying the above-recited class and subclasses, appointing the plaintiffs' counsel as class counsel. (Case No. JRR-19-492, ECF Nos. 62, 63.) By virtue of the allegations in the instant action, both Plaintiffs here are members of the *Remsnyder* MBA class.

## II.    LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(d)

Defendant moves for dismissal, or in the alternative, for summary judgment. "A motion with this caption implicates the court's discretion under Fed. R. Civ. P. 12(d)." *Hayes v. Maryland Transit Admin.*, 708 F. Supp. 3d 683, 688 (D. Md. 2023), *aff'd*, No. 24-1482, 2024 WL 4262786 (4th Cir. Sept. 23, 2024) (quoting *Snyder v. Md. Dep't of Transp.*, No. CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022)). Federal Rule of Civil Procedure 12(d) provides: "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded

by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d).

"A district judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it'"; such discretion "should be exercised with great caution and attention to the parties' procedural rights." *Sammons v. McCarthy*, 606 F. Supp. 3d 165, 193 (D. Md. 2022) (quoting 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed. 2018)); *see Sol v. M&T Bank*, 713 F. Supp. 3d 89, 99–100 (D. Md. 2024) (same). "In general, courts are guided by whether consideration of extraneous material 'is likely to facilitate the disposition of the action,' and 'whether discovery prior to the utilization of the summary judgment procedure' is necessary." *Sammons*, 606 F. Supp. 3d at 193 (quoting 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366).

"There are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). First, "all parties be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment," including where a party "is aware that material outside the pleadings is before the court." *Id.* (quoting *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir. 1985)). Second, customarily, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177. "Generally, if a party believes that summary judgment is procedurally inappropriate because the party needs discovery to properly oppose the motion, the party should file a Rule 56(d) affidavit informing the court of such." *Sol*, 713 F. Supp. 3d at 100 (citing *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 542–43 (D. Md. 2012)).

7

Here, Defendant seeks summary judgment as to one argument he advances—that Mr. McCarrell's claims are time-barred as a matter of fact. (ECF No. 57-1 at pp. 9–10.)[6] In support of his argument, Defendant relies upon an affidavit submitted by Plaintiff's mother, Mary Soller. (Soller Aff., ECF No. 8-2.) Plaintiffs do not argue against conversion, offer a Rule 56(d) affidavit that discovery is needed to properly oppose the Motion, or otherwise request the court forbear to permit discovery. (ECF No. 62-1 at pp. 8–9.) Instead, Plaintiffs assert there is a dispute of material fact based on the opposing testimonies of Plaintiff (at the Show Cause Hearing) and Ms. Soller (via her affidavit). Where Plaintiffs have not opposed treating the Motion as one for summary judgment as to this singular argument, the court will construe the Motion as a motion to dismiss in part and a motion for summary judgment in part.

### B. Federal Rule of Civil Procedure 12(b)(6)

A motion asserted under Federal Rule of Civil Procedure 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual

---

[6] Defendant also asserts Plaintiffs' claims are facially time-barred as a matter of law by virtue of their membership in the *Remsnyder* MBA class and resultant constructive notice of their present claims; on that basis, Defendant argues their claims here should be dismissed for failure to state a claim per Rule 12(b)(6). *Id.* at pp. 2, 6-8.

allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

### C.  Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249. Trial courts in the Fourth Circuit have an

"affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted); *see Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023) (providing that a party "need[s] to present more than their own unsupported speculation and conclusory allegations to survive").  Further, "[u]nder this standard, 'the mere existence of a scintilla of evidence' in favor of the non-movant's position is insufficient to withstand the summary judgment motion." *Wai Man Tom v. Hospitality Ventures, LLC,* 980 F.2d 1027, 1037 (4th Cir. 2020) (quoting *Anderson,* 477 U.S. at 252).

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).  The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage).  Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

## III.    <u>ANALYSIS</u>

Defendant contends that Plaintiffs' claims are barred for the following reasons: (1) Plaintiffs' claims are untimely as a matter of law and tolling for fraudulent concealment is not available; (2) Plaintiffs cannot pursue a successive class action under *China Agritech v. Resh*, 584

U.S. 732 (2018); and (3) Mr. McCarrell's claims in particular are untimely as a matter of fact. (ECF No. 57-1.)

### A. Class Action Tolling Principles

The court begins with a brief overview of class action tolling principles that flow from the Supreme Court's decision in *American Pipe and Construction Co. v. Utah*. In *American Pipe*, the Supreme Court announced a tolling rule for class actions, holding that "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. 538, 554 (1974). The Court subsequently reiterated its holding in *Crown, Cork & Seal Co. v. Parker*, noting that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action," and that "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied." 462 U.S. 345, 353–54 (1983). *Crown, Cork & Seal* clarified that tolling per *American Pipe* was not limited to intervenors. *Id.* at 353. Indeed, as the Supreme Court later remarked in *China Agritech v. Resh*:

> The Court held in *American Pipe* that the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint. Where class-action status has been denied, the Court further ruled, members of the failed class could timely intervene as individual plaintiffs in the still-pending action, shorn of its class character. See *id.,* at 544, 552–553, 94 S.Ct. 756. Later, in *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), the Court clarified *American Pipe*'s tolling rule: The rule is not dependent on intervening in or joining an existing suit; it applies as well to putative class members who, after denial of class certification, "prefer to bring an individual suit rather than intervene . . . once the economies of a class action [are] no longer available." 462 U.S., at 350, 353–354, 103 S.Ct. 2392; see *California Public Employees' Retirement System v. ANZ Securities, Inc.,* 582 U.S. 497, 512, 137 S.Ct. 2042, 2053, 198 L.Ed.2d 584 (2017) (*American Pipe* "permitt[ed] a class action to

> splinter into individual suits"); *Smith v. Bayer Corp.,* 564 U.S. 299,
> 313–314, n. 10, 131 S.Ct. 2368, 180 L.Ed.2d 341 (2011) (under
> *American Pipe* tolling rule, "a putative member of an uncertified
> class may wait until after the court rules on the certification motion
> to file an individual claim or move to intervene in the [existing]
> suit").

584 U.S. 732, 735 (2018).

However, "*American Pipe* and *Crown, Cork* addressed only putative class members who

wish to sue individually after a class-certification denial." *Id.* at 739. In *China Agritech*, the Court

held that *American Pipe* tolling "does not permit the maintenance of a follow-on class action past

expiration of the statute of limitations." *Id.* at 736. Indeed, it "does not permit a plaintiff who

waits out the statute of limitations to piggyback on an earlier, timely filed class action." *Id.* at 740.

### B. The Timeliness of Plaintiffs' Claims

As described earlier at page 10 and footnote 6, Defendant first argues that Plaintiffs' claims

are time-barred as a matter of law and should be dismissed because they were on "constructive

notice" of their claims with the filing of the *Remsnyder* litigation. (ECF No. 76-1 at pp. 6–8.)

As the parties acknowledge, there is a one-year statute of limitations for RESPA claims

under 12 U.S.C. §2607(a), 12 U.S.C.§ 2614, and a four-year statute of limitations for RICO claims,

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). Ordinarily, the

RESPA limitations period runs from the date of the violation, 12 U.S.C. § 2614, and the RICO

limitations period runs from "when a plaintiff knows or should know of the injury that underlies

his cause of action." *CSX Transp., Inc. v. Gilkison*, 406 F. App'x 723, 729 (4th Cir. 2010) (first

quoting *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.,* 828 F.2d 211, 220 (4th Cir.1987);

then citing *Rotella v. Wood,* 528 U.S. 549, 555 (2000)). Thus, where Plaintiffs initiated this action

in 2023 concerning actions during and preceding 2015, their claims would ordinarily be untimely.

Plaintiffs, however, invoke, and allege facts in support of, the fraudulent concealment doctrine. The fraudulent concealment doctrine "applies in situations 'where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action.'" *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 549 (4th Cir. 2019) (quoting *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987)). It operates to ensure "that wrongdoers are not permitted, or encouraged, to take advantage of the limitations period to commit secret illegal conduct without penalty." *Id.* (quoting *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 125 (4th Cir. 1995)). The doctrine "does not stop the clock," but instead "moves the clock, starting it from when the wrong was discovered rather than when it was committed." *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 178 (4th Cir. 2007) (citing *Bailey v. Glover*, 88 U.S. 342, 349–50 (1874)).

For the fraudulent concealment tolling doctrine to apply, a plaintiff must demonstrate three elements: "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence.'"[7] *Scharpf v. Gen. Dynamics Corp.*, 137 F.4th 188, 195 (4th Cir. 2025) (quoting *Marlinton*, 71 F.3d at 122). As for the first element, Defendant does not argue Plaintiffs fail to plead facts in support of fraudulent concealment; and Plaintiffs point to their relevant SAC allegations on this point. (ECF No. 62-1 at pp. 2–4.) Instead,

---

[7] Defendant avers that "[t]he fraudulent concealment doctrine requires the plaintiffs show (1) that defendants engaged in a course of conduct designed to conceal evidence of their alleged wrongdoing and that (2) [the plaintiffs] were not on actual or constructive notice of that evidence, despite (3) their exercise of diligence.'" (ECF No. 57- at p. 6, quoting *Browning v. Tiger's Eye Benefits Consulting*, 313 F. App'x 656, 663 (4th Cir. 2009) (citing *Larson v. Northrop Corp.*, 21 F.3d 1164, 1172–74 (D.C. Cir. 1994)).") As discussed elsewhere in the court's opinion, the Fourth Circuit has repeatedly, in reported opinions both before and after *Browning*, announced the elements as the court relays them here. *See, e.g.*, *See Scharpf v. Gen. Dynamics Corp.*, 137 F.4th 188, 195 (4th Cir. 2025); *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 544 (4th Cir. 2019); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 370 (4th Cir. 2014); *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995); *Weinberger v. Retail Credit Co.*, 498 F.2d 552, 555 (4th Cir. 1974).

Defendant contends Plaintiffs fail to satisfy the second element as a matter of law because Plaintiffs had constructive notice of the alleged violations due to the *Remsnyder* litigation.

The court first notes that Defendant's basis for imputing constructive notice upon Plaintiffs, flowing from the Supreme Court's decision in *American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974), appears tenuous at best.  The holding of *American Pipe* is not about the parameters, or application of the principle, of constructive notice (a legal fiction); rather it bears on judicial tolling of limitations (a legal doctrine). [8]  In *American Pipe,* the Court held that commencement of a class action suspends limitations for members of a proposed class who make timely motions to intervene following denial of class certification.  *Id.* at 765–67.

The court is not persuaded to extend *American Pipe* as Defendant proposes.  First, Defendant's argument is predominantly based on inference, or, at best, *dicta*—that the holding of *American Pipe* necessarily accepts as true (or implies that it is established) that putative class members have (in the absence of actual notice) constructive notice of their claims against a defendant.  But neither inference nor *dicta* will bear Defendant's proposed finding as a matter of law, especially on a 12(b)(6) motion and the present stage of this litigation.  Second, the contextual discussion underpinning the holding in *American Pipe* was about the impact of a denial of class certification, which is materially distinguishable from the facts here.  *See, Am. Pipe*, 414 U.S. at 545; *see also Ganousis v. E.I. du Pont de Nemours & Co.*, 803 F. Supp. 149, 156 (N.D. Ill. 1992) (pertaining to proper application of *American Pipe*).

In any event, even assuming Plaintiffs were on constructive notice by way of *American Pipe*, the court is not persuaded that Defendant has carried its burden to show that Plaintiffs are barred from invoking the fraudulent concealment doctrine as a matter of law on that basis.

---

[8] *See, e.g.*, *Gonzales v. United States*, Case No. 22-18092, 2024 WL 3519782, *3 (4th Cir. 2024) (describing judicial tolling as a doctrine)

Defendant cites the unpublished opinion of *Browning v. Tiger's Eye Benefits Consulting*, 313 F. App'x 656 (4th Cir. 2009), for the proposition that constructive notice acts as such a bar. *In Browning,* the Fourth Circuit characterizes the second element of the fraudulent concealment doctrine as a lack of "actual or constructive notice" of evidence of a defendant's wrongdoing.[9] *Id.* at 663 (quoting *Larson v. Northrop Corp.*, 21 F.3d 1164, 1172 (D.C. Cir. 1994)). But following *Browning,* in a published opinion, the Fourth Circuit noted that the second element is characterized by "a lack of actual notice," meaning "the plaintiff knew the 'fraudulently concealed facts, which are the basis of a claim.'" *SD3 II LLC v. Black & Decker (U.S.) Inc.*, 888 F.3d 98, 108 (4th Cir. 2018) (quoting *GO Computer*, 508 F.3d at 178). The Fourth Circuit continued:

> [A] plaintiff is on actual notice if it has "sufficient facts to identify a particular cause of action." *Hobson v. Wilson*, 737 F.2d 1, 35 (D.C. Cir. 1984), *overruled in part on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Mere "hints, suspicions, hunches or rumors" are not enough to put a plaintiff on actual notice. *Hobson*, 737 F.2d at 35.

*Id.* at 109.

Defendant does not challenge that Plaintiffs have sufficiently alleged a lack of actual notice. Further, based on the foregoing authority, the court is not persuaded that tolling for fraudulent concealment is barred as a matter of law based on the assertion of constructive notice by way of other litigation. This is especially true at the present stage of this litigation. *See State Auto. Mut. Ins. Co. v. Lennox*, 422 F. Supp. 3d 948, 964 (D. Md. 2019) (noting that "the defense

---

[9] The court further notes that, despite the fact that *Browning* addresses the fraudulent concealment doctrine under the "federal common law," *see* 313 F. App'x 656, 663 (4th Cir. 2009), both it and *Larson v. Northrop Corp.*, 21 F.3d 1164 (D.C. Cir. 1994), upon which it relied, concerned violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), a statute that contains its own tolling provision for fraud or concealment, 29 U.S.C. § 1113. The D.C. Circuit noted in *Larson* that the fraudulent concealment doctrine was "incorporate[d]" into § 1113. 21 F.3d at 1172. The fact that *Larson*'s recitation of the fraudulent concealment doctrine, which *Browning* later relied upon, was intertwined with the substance and application of an ERISA provision further mitigates its precedential value here.

of limitations is ordinarily not considered in the context of a motion to dismiss," except where the time bar "appears on the face of the complaint") (citations omitted).

Further, while the elements of the fraudulent concealment doctrine appear to allow for an assessment of "inquiry notice" within the due diligence inquiry, Defendant states clearly that he advances no such argument.  (ECF No. 59 at pp. 3–5.)  Even if Defendant did argue inquiry notice, however, Plaintiffs are correct that it would not weigh in favor of the Motion.  "Inquiry notice for purposes of a fraudulent concealment claim 'charges a person to investigate when the information at hand would have prompted a reasonable person to do so.'"  *SD3 II*, 888 F.3d at 113 (quoting *GO Comput.*, 508 F.3d at 178).  "[I]f the plaintiff (1) believes he might have been harmed and (2) knows who is responsible for that harm, then he is on inquiry notice to act."  *Id.*

In *Edmonson v. Eagle National Bank*, the Fourth Circuit opined on an argument by defendants in a RESPA action that separate litigation related to the underlying RESPA violations at issue "should have 'excited further inquiry'" from the plaintiffs.  922 F.3d 535, 555 (4th Cir. 2019) (quoting *Marlinton*, 71 F.3d at 128).  The Fourth Circuit reasoned that "the adequacy of a plaintiff's diligence is generally not amenable to resolution on the pleadings," further providing:

> To be sure, the filing of similar lawsuits against the same defendant "may in some circumstances suffice to give notice" of possible claims. *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1171 (5th Cir. 1979). In other circumstances, however, "the mere availability of open and readily accessible public records"—such as legal filings—"may not suffice by itself to defeat a fraudulent-concealment claim," particularly if a plaintiff lacks "ample reason to look at these records." *Ruth v. Unifund CCR Ptrs.*, 604 F.3d 908, 911 (6th Cir. 2010).

> Regarding *Fangman* in particular, only two of the Lenders (Eagle Bank and Bank of America) were ever parties to that litigation. And Eagle Bank and Bank of America were dismissed from the *Fangman* litigation in its early stages. *See J. v. Genuine Title, LLC*, 2015 WL 8315704, at *1. . . . It is difficult to imagine that Plaintiffs in this action could have accessed—or did access—the relevant filings,

> orders, and opinions in *Fangman*, all of which were unpublished and accessible only through a LexisNexis, WestLaw, or a PACER account. And the motion to dismiss record before this Court includes no evidence that any aspect of the *Fangman* proceedings was publicized, let alone publicized in a media outlet regularly consulted by a Plaintiff, meaning that this record is devoid of any "reason [for a Plaintiff] to look at these records." *Ruth*, 604 F.3d at 911. . . .
>
> Put simply, the fraudulent concealment doctrine requires *reasonable* diligence; it does not necessarily hold individual borrowers to the diligence standard of combing court filings in potentially related cases, particularly when the borrower has no reason to be aware of the related cases.

*Id.* at 555 (emphasis in original). Like *Edmonson*, at the present stage of the case and based on the record before the court, the court declines to hold that the *Remsnyder* litigation, "as a matter of law, placed Plaintiffs on inquiry notice." *Id.*

Accordingly, Defendant has not met its burden to show that Plaintiffs' invocation of the fraudulent concealment doctrine fails as a matter of law.

### C. Plaintiffs' Class Claims

Even if Plaintiffs' claims are not time-barred as a matter of law, Defendant argues they may not assert untimely class claims in view of the Supreme Court's holding in *China Agritech v. Resh*, 584 U.S. 732 (2018). (ECF No. 57-1 at pp. 11–14.) Plaintiffs allege here, with supporting allegations, that "all Class Members are entitled to fraudulent concealment tolling of [the] applicable limitations period." (ECF No. 56 ¶ 193.) As discussed above, the court does not adopt Defendant's argument that constructive notice by way of *American Pipe* bars fraudulent concealment tolling as a matter of law here. Further, Defendant does not challenge the sufficiency of Plaintiffs' class allegations in support of such tolling (nor does Defendant assert a lack of due diligence based on inquiry notice). Based on the foregoing, Defendant has not shown that

Plaintiffs and the putative class members are barred as a matter of law from seeking to avail themselves of fraudulent concealment tolling.[10]

Separate from the availability of the fraudulent concealment doctrine in particular, Defendant seemingly argues that *China Agritech* bars tolling of class claims.[11]  The court is not persuaded.  As discussed above, in *China Agritech*, the Supreme Court considered the following question: "Upon denial of class certification, may a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, commence a class action anew beyond the time allowed by the applicable statute of limitations?"  *China Agritech v. Resh,* 584 U.S. 732, 735-36 (2018).  In answering "no," the Court held that *American Pipe* tolling "does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action."  *Id.* at 740.  Instead, "any additional *class* filings should be made early on, soon after the commencement of the first action seeking class certification."  *Id.*  In discussing diligence, the *China Agritech* Court noted:

> A would-be class representative who commences suit after expiration of the limitation period, however, can hardly qualify as diligent in asserting claims and pursuing relief. Her interest in representing the class as lead plaintiff, therefore, would not be preserved by the prior plaintiff's timely filed class suit.

*Id.* at 743.

While the court agrees with Defendant that Plaintiffs may not benefit from *American Pipe* tolling by operation of the pending *Remsnyder* action,[12] the court is not persuaded to read *China*

---

[10] To be clear, the court's conclusion as to fraudulent concealment is solely as to whether Plaintiffs may proceed to the next stage with their claims as a general proposition; the court makes no finding or determination as to whether Plaintiffs have successfully fulfilled the elements to claim its protection.

[11] Excluding his argument regarding *China Agritech*, Defendant does not argue that the fraudulent concealment doctrine is unavailable to Plaintiffs' class claims.

[12] To the extent Plaintiffs seek to invoke *American Pipe* tolling here, the court agrees with Defendant that such tolling is barred as a matter of law.  Plaintiffs' assertion that *China Agritech* limits *American Pipe* tolling only after class certification is, as the First Circuit notes, "an impermissibly narrow reading of the Court's decision."  *See In re Celexa*

*Agritech*'s holding to extend beyond *American Pipe* tolling, which is to say to bar Plaintiffs' class assertion of fraudulent concealment here.   *China Agritech* does not address the doctrine of fraudulent concealment; its holding is announced in the context of the separate *American Pipe* tolling the court distinguished above.   Moreover, much of the reasoning in which the *China Agritech* holding is grounded does not account for operation of fraudulent concealment.   For instance, as noted above, *China Agritech* addresses a concern for lack of diligence on the part of would-be class representatives; however, in order to invoke fraudulent concealment tolling, Plaintiffs must prove they acted with due diligence.  *See Scharpf v. Gen. Dynamics Corp.*, 137 F.4th 188, 195 (4th Cir. 2025), *supra*.  The *China Agritech* reasoning also does not address where a would-be class representative has delayed suit due to the defendant's fraudulent concealment of evidence of his wrongdoing.

The court is simply not persuaded to read *China Agritech*'s holding to bar operation of the fraudulent concealment doctrine for class claims, especially in the absence of authority squarely supporting same (or at least more closely analogous than authority Defendant presents here).  *See*

---

*& Lexapro Mktg. & Sales Pracs. Litig.*, 915 F.3d 1, 16 (1st Cir. 2019).  As demonstrated above, *China Agritech* is concerned with timeliness.  As the First Circuit explained:

> Though the Supreme Court granted certiorari in that case to answer the narrow question of whether a putative class member may commence a class action beyond the limitations period upon the district court's denial of a request for class certification filed within the statute of limitations, id. at 1804, the Court proceeded to provide a broader answer: Its precedents do not "so much as hint[ ] that [American Pipe] tolling extends to otherwise time-barred class claims," id. at 1806. Thus, the Court effectively ruled that the tolling effect of a motion to certify a class applies only to individual claims, no matter how the motion is ultimately resolved. To hold otherwise would be to allow a chain of withdrawn class-action suits to extend the limitations period forever.

*In re Celexa*, 915 F.3d at 16–17; *see also Blake v. JP Morgan Chase Bank NA*, 927 F.3d 701, 710 (3d Cir. 2019) (explaining that the *China Agritech* discussion that district courts have ample tools at their disposal to manage a multiplicity of suits, "presuppose[s] '[m]ultiple *timely* filings'") (emphasis in original) (quoting *China Agritech*, 784 U.S. at 747).  Further, the *China Agritech* Court's concern for "limitless" successive class suits is demonstrated here. Plaintiffs' interpretation here would yield the result of tolling of any class actions for well over six years and counting. Such an outcome is plainly at odds with the rationale set forth in *China Agritech*.

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 915 F.3d 1, 16 (1st Cir. 2019) (addressing *American Pipe* tolling); *Ochoa v. Pershing LLC*, No. 3:16-CV-1485-N, 2021 WL 5163196, at *2 (N.D. Tex. Nov. 5, 2021) (addressing *American Pipe* tolling).[13]  To the contrary, in *Edmonson v. Eagle National Bank*, which followed *China Agritech*, the Fourth Circuit reversed a district court dismissal of a RESPA class action where, like Plaintiffs here, the plaintiffs pleaded facts in support of fraudulent concealment tolling for the class.  922 F.3d 535, 542 (4th Cir. 2019).  While on different grounds than advanced here, the Fourth Circuit held that their allegations of fraudulent concealment were sufficient to overcome Rule 12(b)(6) review.  *Id.* at 558.

Accordingly, at this stage of litigation where the court is obliged to accept Plaintiffs' allegations as true and draw all reasonable inferences in their favor, Defendant has not met its burden to show that Plaintiffs' class claims are time-barred as a matter of law.[14]  The court will therefore deny the Motion on that basis.

### D.  Summary Judgment as to Mr. McCarrell's Claims

Finally, Defendant seeks summary judgment that Mr. McCarrell's claims are time-barred as a matter of law as evidenced by the information in Ms. Soller's affidavit.  (ECF No. 57-1 at pp. 9–10.)  According to Defendant, Ms. Soller's affidavit makes clear that Mr. McCarrell was on actual notice of his claims against Defendant because he was contacted by his attorneys about this matter between 2018 and 2020.  (ECF No. 57-1 at pp. 9–10.)  Specifically, Ms. Soller's affidavit

---

[13] The court acknowledges *Practical Management Support Services, Inc. v. Cirque du Soleil Inc.*, No. 14 C 2032, 2018 WL 3659349 (N.D. Ill. Aug. 2, 2018).  There, the Northern District of Illinois, addressing separately the doctrines of fraudulent concealment tolling and *American Pipe* judicial tolling, notes that, per *China Agritech*, a would-be class representative who commences suit after the expiration of limitations cannot qualify as diligent, thus barring fraudulent concealment tolling.  In addition to the fact that the decision does not address whether there were facts alleged in support of fraudulent concealment, for the reasons set forth above, the court finds the reasoning not persuasive upon the facts alleged here.

[14] Because the court's analysis turns on application of the fraudulent concealment doctrine, the court need not reach Defendant's argument that *American Pipe* tolling does not extend to an action against Defendant here.  (ECF No. 57-1 at pp. 8–9.)

from October 2023 provides, *inter alia*: "My son told me that he was contacted by attorneys—whom he could not identify—by telephone several years ago regarding a possible lawsuit against MBA Mortgage." (Soller Aff., ECF No. 8-1 ¶ 10.)

This affidavit, however, is not uncontroverted. As Defendant acknowledges, Plaintiff McCarrell testified at the show cause hearing on inquiry from the court as follows:

> Q. Do you recall telling your mother that you were contacted by the Plaintiffs' attorneys that represent you in this case many years before that or in the 2018/'19 time frame?
>
> A. No, I do not. 2022 was the first time I was contacted.
>
> Q. Okay. And so you didn't tell your mother that you had been contacted by these Plaintiffs' attorneys before that time period?
>
> A. No.

(Dec. 11, 2023 Hr'g Tr., ECF No. 38 at 11:5–12.)

Plaintiffs urge that Ms. Soller's affidavit is procedurally and substantively "insufficient to support dismissal or summary judgment," especially given that limitations is an affirmative defense to be resolved by motion to dismiss in the rare instance where "'all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" (ECF No. 62-1 at pp. 8; quoting *Goodman v. PraxAir, Inc*., 494 F.3d 458, 464 (4th Cir. 2007).) Plaintiffs also complain that Defendant exaggerates the substantive content of the affidavit. *Id* at pp. 8-10. For his part, Defendant argues that Mr. McCarrell's testimony is inadmissible under Federal Rule of Evidence 804(b)(1)(B), which does not exclude an unavailable witness's former testimony from the rule against hearsay where the opposing party had an opportunity to develop it by cross examination. (ECF No. 59 at p. 5.) Neither witness—Ms. Soller (who testified via affidavit) nor Mr. McCarrell (who testified in open court)—was subject to cross examination. Defendant's argument misses the mark. That the court did not allow cross-examination of Mr. McCarrell about his discussions

with his attorney at the show cause hearing does not mean that Mr. McCarrell's testimony on the topic at hand cannot be elicited (whether at deposition, a hearing, or trial) in a form that would be admissible at trial. *See* FED. R. CIV. P. 56(c)(2). This is especially true with discovery not yet commenced.

There is plainly a genuine dispute of material fact here. As counsel are well-aware, on a motion for summary judgment, the court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)). Accordingly, here, where resolution of the material facts in dispute turns on those very tasks, summary judgment is not appropriate. *See Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 264 (D. Md. 2023) (explaining "[w]here there is conflicting evidence, . . . summary judgment ordinarily is not appropriate because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The court will therefore deny the Motion as to summary judgment on Mr. McCarrell's claims as time-barred as a matter of fact based on the testimony of Ms. Soller.

## IV.   <u>CONCLUSION</u>

For the reasons set forth herein, by separate order, the Motion will be denied.

The court notes Defendant's assertion that whether Mr. McCarrell had actual notice of his claims should be "resolved as a threshold issue." (ECF No. 57-1 at p. 10.) Because the court will issue a scheduling order calling for an initial joint status report shortly after Defendant files his

forthcoming answer, the parties shall set forth their positions and proposals therein on this topic, and depending on same, the court will convene a status conference.[15]

September 22, 2025                                    /S/

_____

Julie R. Rubin
United States District Judge

---

[15] This is, of course, without prejudice to Defendant to file any motion he deems appropriate.